SAMUEL O'BRIEN, APPELLANT, V. RUDOLPH B. SCHNEIDER ET AL., APPELLEES.

FILED FEBRUARY 15, 1911.   No. 16,956.

1. Drainage Districts: ESTABLISHMENT: FINDINGS OF BOARD. A finding made by a board of supervisors in passing upon a petition filed under the provisions of article V, ch. 89, Comp. St. 1907, that "it will be for the public health, convenience and welfare to form a district as prayed for in said petition," fixing the boundaries of the district and finding that "said boundaries will do justice and equity to all persons and promote the interests of said district," is equivalent to finding that it will be conducive to the public health, convenience and welfare to drain the lands described in the petition.

2. ———: ———: PETITION. The petition upon which the supervisors of Dodge county acted in fixing the boundaries and calling an election for the formation of the Elkhorn drainage district, examined in the opinion, and *held* sufficient as against a collateral attack.

3. ——: ——: Bond. The bond required by section 3, art. V, ch. 89, Comp. St. 1907, need not be signed by the petitioners as principals, and the county clerk may accept a petitioner as surety on the bond.

4. ——: ——: ——. A bond signed by principals and surety, and approved by the clerk, is not invalid for the reason that it is conditioned to become void if the district prayed for is formed, or if the petitioners shall pay the expense incurred by the county by reason of the petition.

5. ——: ——: Assessments. The proceedings leading up to and including the formation of a drainage district and the assessments subsequently levied therein are not void because the scheme of drainage finally accepted will not benefit a small fraction of the tracts included within the district and upon which no assessments are levied.

6. ——: ——: Notice: Apportionment of Benefits. The fact that the directors are not required to give notice before adopting a plan for draining the lands within the district does not render the act void, nor does the fact that an apportionment of benefits precedes the construction of the improvements invalidate the legislation.

7. ——: ——: ——: ——. A provision in the statute that the directors of the district shall, with the assistance of an engineer after he has prepared a detailed statement of the proposed plan of drainage, apportion to every forty-acre tract and every city or village lot within the district its fair proportion of the total benefits to accrue from the construction of the system of drainage, but that the apportionment shall not become final until after all persons interested have been given notice of the time and place where said apportionment will be confirmed, and giving every property owner the right to protest, to a hearing, and to appeal from the order of the board, is not unconstitutional and void because all assessments shall be made upon the basis of that apportionment, unless a change of plans necessitates a new apportionment.

8. ——: ——: Limitation of Assessments. While the act does not in precise language limit the aggregate of assessments that may be levied for all necessary purposes to the benefits that will accrue to the lands within the district, it appears from a consideration of the entire act that the legislature so intended.

APPEAL from the district court for Dodge county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*F. W. Button* and *I. L. Albert,* for appellant.

*Courtright & Sidner, contra.*

ROOT, J.

This is an action in equity to restrain the directors of a drainage district from levying special assessments upon the plaintiff's land, from collecting any such assessments, and from acting as officers of the district. The defendants prevailed, and the plaintiff appeals.

The statute under which the drainage district was formed is chapter 153, laws 1907 (Comp. St. 1907, ch. 89, art. V). The plaintiff contends that the act is unconstitutional and void. Considerable of the argument is addressed to propositions determined in *State v. Hanson,* 80 Neb. 724, 738. The principles announced in that case will not be reconsidered, but we will pass to the subjects not presented in that case but urged in the instant one as decisive of the invalidity of the law.

Section 11 of the act provides that the board with expert assistance shall by a system of units apportion to every lot or forty-acre tract which will be benefited by the proposed improvement its proportion of benefits. That is to say, to the tracts least benefited one unit shall be apportioned, and to every tract receiving a greater benefit a greater number of units or fractions of units shall be apportioned according to the benefits to be received. A notice shall be given of the time and place when and where the directors will meet for the purpose of equalizing said apportionment, at which time any person interested may object thereto. If any person feels aggrieved by an order made at the hearing, he may appeal to the district court, where the issue is to be heard in a summary manner, and from its judgment an appeal will lie to this court. The distribution of benefits when finally adjusted shall continue as the basis upon which assessments will be made to pay all expenses and costs incident to the organization

34

and maintenance of the district and the construction and repair of improvements therein, except in case a change in plans, or an extension or enlargement of the improvements requires a different apportionment. In that event a new apportionment shall be made. Counsel argue that this procedure is vicious, and that the limit of assessments under this statute is not the special benefits accruing to the land, but the aggregate of expenses and expenditures. No system of assessment can bring about absolute equality or attain exact justice among property owners or taxpayers. The best that can be expected is a substantial approximation of burdens according to benefits, and the legislature is vested with great discretion in providing the methods by which that approximation shall be attained. *Chadwick v. Kelley,* 187 U. S. 540; *City of Findlay v. Frey,* 51 Ohio St. 390; *Allen v. Drew,* 44 Vt. 174; *Mason v. Spencer,* 35 Kan. 512. Statutes which provide for an apportionment of benefits preceding the construction of improvements to be used as the basis upon which all assessments shall be made are not void for the reason that the property owner is not permitted to contest the amount of every levy. He is required to pay no more than his just proportion of the cost and expense of making and maintaining the improvement, and the directors, by their first hearing and apportionment, acquire jurisdiction to make the subsequent levies. *People v. Chapman,* 127 Ill. 387. *Neal v. Vansickle,* 72 Neb. 105, does not hold to the contrary. We there condemned a statute which provided for a "level assessment" of not to exceed a definite sum per acre. The opinion recognizes the right, although it doubts the wisdom, of levying an assessment in anticipation of benefits to accrue from public improvements. Nor do we think a fair construction of the statute leads to the conclusion that the district directors may levy assessments, exclusive of interest charges and the cost of repairs, which in the aggregate will exceed the benefits to the land assessed. We should not presume that the legislature ignored the constitution, but rather that it intended

the drainage officials to act within the limits of the fundamental law. *Voigt v. Detroit City*, 184 U. S. 115.; *Martin v. District of Columbia*, 205 U. S. 135; *Ritter v. Drainage District*, 78 Ark. 590; *Village of Passaic v. State*, 37 N. J. Law, 538. We therefore conclude that the plaintiff's contention that the statute is repugnant to the constitution, and therefore void, is not well taken.

The plaintiff contends that the district has not been formed because the petition does not describe the character of the improvements to be made and because the board of supervisors did not find that the anticipated improvements will be conducive to the public health, convenience, or welfare. The petitioners alleged that it will be conducive to public health, convenience and welfare to form a district and to make and maintain improvements therein under the provisions of the act of the legislature herein considered. In our judgment the petition is not so indefinite as to be vulnerable to a collateral attack. The board of supervisors, after an examination of the proposed district and after receiving the advice of the county surveyor, found that it "will be for the public health, convenience and welfare to form a district as prayed for in said petition with certain modifications of the boundaries thereof as hereinafter provided." They also found "that said boundaries will do justice and equity to all persons and promote the interests of said district if formed." The boundaries of the proposed district are also set forth in detail. The drainage act contemplates the drainage of land by the construction of drains, dykes or levees, or by the construction, straightening, widening, deepening or alteration of existing drains, or watercourses, or by riprapping or otherwise protecting the banks of watercourses or by control of surface water or streams of running water. The earlier drainage acts permitted the construction of a main ditch with laterals, and were so hedged about with formalities and conditions that the officers charged with the duty of their administration encountered many difficulties. The supervisors were not permit-

ted to exercise a discretion in the alteration of plans, although such changes were dictated by conditions not anticipated when a ditch enterprise was inaugurated, and time and money were frequently expended with very unsatisfactory results. To remedy such conditions and to enact a law capable of a practical application in the valleys of such watercourses as the Elkhorn, the Nemaha, and other like streams in Nebraska, the later drainage acts were passed.

Article V, ch. 89, Comp. St. 1907, contemplates that county commissioners or boards of supervisors, when petitioned by the requisite number of qualified petitioners and after a bond has been given to hold the county harmless, shall determine whether the creation of a drainage district, practically as suggested in the petition, and the prosecution of the public improvements authorized by law therein, will be conducive to the public health, welfare or convenience. If so, they alter the boundaries of the district, if in their judgment such boundaries should be changed, and after due notice the individuals upon whom the burden of that improvement will be placed vote for or against the formation of the district. It would have been better if the supervisors in the instant case had plainly stated that in their judgment the public health, welfare or convenience would be advanced by draining and protecting from water the lands described in the petition and by creating a district for that purpose. They did find that the public health, welfare and convenience will be advanced by the formation of a district "as prayed for in the petition." The petition prays that the district be formed for the purpose of prosecuting such improvements therein as may be authorized under the drainage act of 1907, and we think the finding said to be absent was in effect made. *State v. Hanson*, 80 Neb. 724, 738; *Oliver v. Monona County*, 117 Ia. 43. The act under consideration does not direct the supervisors to enter upon their journal a record of their findings, and hence the case of *State v. Colfax County*, 51 Neb. 28, is not in point. Nor is the act

invalid because the directors are not compelled to notify the landowners of the time when and place where a plan will be adopted for draining the lands within the district. Notice of that character is a matter of grace, and not of right, which the legislature may grant or withhold in its discretion. While the statute does not provide for notice before the directors shall adopt a system of drainage, the property owner is given notice of the time when benefits will be apportioned to his land. At that time the engineer must have prepared a detailed plan, and, if the expense of carrying that scheme into execution will exceed the benefits that will accrue to the land within the district, a hearing upon the objections will develop that fact and the plan will not be adopted. Experience teaches that benefits generally exceed the cost of constructing and maintaining a drainage system. In the case at bar the plaintiff charged in his petition that his land will not be benefited to the extent of the levy possible thereon, but no attempt was made to prove that fact, and we are of opinion that the evidence is ample to sustain a finding that his benefits will largely exceed any assessments that may be levied by the directors upon the plaintiff's farm.

The exceptions to the bond should be overruled. The statute requires the petitioners to "file a bond with surety or sureties to be approved by said county clerk, which bond shall run to the said county and be conditioned to pay all expenses of said county by reason of said proceedings in case said district be not formed." A bond was filed with the clerk and approved by him. The undertaking is signed by two of the petitioners as principals and by one of them as surety, and by its terms they are bound unto the county "for the payment of expenses of said county by reason of the proceedings hereinafter mentioned," and it is conditioned to be void, "if said district be formed, or if Maurice Nelson and others shall pay all the expenses of said county by reason of said proceedings in case said district be not formed," otherwise it is to remain in full force and effect. The statute does not require the peti-

tioners to sign the bond, but to file a bond. A document is filed with an officer when it is placed in his custody and deposited by him in the place where his official records and papers are usually kept. *Reed v. Inhabitants of Acton*, 120 Mass. 130; 3 Words and Phrases, p. 2765. The fact that all of the petitioners did not sign the bond is immaterial. *Clark v. Strong*, 14 Neb. 229; *Bollman v. Pasewalk*, 22 Neb. 761; *Stump v. Richardson County Bank*, 24 Neb. 522; *Eckman v. Hammond*, 27 Neb. 611.

Neither does the statute provide that the surety shall be other than a petitioner. Unless the petitioners sign the bond, they are not liable for costs, and there is no good reason why the clerk should not accept a solvent petitioner as surety on the undertaking.

The statement that the bondsmen will pay the cost if Morris and others do not, in the event that the district is not formed, does not vitiate the bond. It would have been as well had no mention been made of Morris and others, but the county is protected, and we think the statute has been satisfied in this regard. In *Casey v. Burt County*, 59 Neb. 624, cited by plaintiff, the bondsmen's liability was limited, and the undertaking was not conditioned that the signers should pay even the limited liability if the board should find against the improvement.

We do not think the fact that a number of small tracts, aggregating 600 acres out of the total of 40,000 acres within the district, will not be assessed renders the formation of the district void. There is nothing in the record to suggest that the inclusion of these tracts of land was fraudulent or that the presence thereof in any manner prejudiced the plaintiff, nor that the finding of the engineer that the ditches when constructed would not benefit those lands is not sustained by the evidence.

Upon the entire record, we find that the decree of the district court is right, and it is

AFFIRMED.

FAWCETT, J., not sitting.