Johnson, J.
The demurrants challenge the validity of Section 36-A of the charter of the city of East Cleveland, quoted in the above statement. They insist that a municipality is without authority to include in its charter any provision which extends the right of suffrage beyond the provisions of Section 1, Article V of the Constitution, viz.: “Every white male citizen of the United States, of the age of twenty-one years, * * * shall have the qualifications of an elector, and be entitled to vote at all elections.” They contend substantially that this section definitely fixes the class of persons who may vote at any election and that this class may vote at all .elections.
On the other hand it is contended that by the provisions of Article XVIII of the Constitution, as amended in 1912, which confers authority on any municipality to adopt a charter for its government and to exercise thereunder all powers of local self-government, the municipality of East Cleveland was authorized to include the provision in question in its charter.
Counsel for the relatrix contend that the case of State, ex rel. Mills, v. The Board of Elections et al., *176 9 C. C., 134, which was affirmed in 54 Ohio St., 631, on the authority of The State, ex rel., v. Cincinnati et al., 19 Ohio, 178, is decisive of the question. It was there held that the act of April 24, 1894, conferring upon women the right to vote and be voted for at any election held for the purpose of choosing any school director, member of the board of education or school council under the general or special laws of the state is valid, it being within the power to provide for the establishment and maintenance of common schools which the constitution confers upon the general assembly, and not within the limitation contained in Section 1 of Article V.
It is said by Shauck, J., in the opinion: “There seems to be no occasion to doubt that only those who have the constitutional qualifications of electors can participate in elections held to fill the offices which the constitution itself has created. This is, in some states, held to be the extent of the constitutional restriction.”
In referring to The State, ex rel., v. Cincinnati et al., 19 Ohio, 178, supra, Judge Shauck says: “In that case the court was called upon to determine whether an act which provided for colored schools in Cincinnati, and the election of colored directors by colored voters, was valid. Notwithstanding the provisions of article four of the constitution then in force, defining an elector to be ‘a white male inhabitant,’ the act was held valid, for the reason that The whole subject of organizing and regulating schools had been left to the general *177 assembly, in the exercise of its legislative powers.’
In Belles v. Burr et al., 76 Mich., 1, it was held that the legislature may confer upon women the right to vote for officers charged with the management of the affairs of the school districts. In the Belles case, at page 11, it is said: “The authority granted by the Constitution to the Legislature to establish a common or primary school system carried with it the authority to prescribe what officers should be chosen to conduct the affairs of the school-districts, to define their powers and duties, their term of office, and how and by whom they should be chosen.”
In Wheeler v. Brady, 15 Kans., 26, it is held that a person having all the qualifications of an-elector, as defined by Section 1, Article V of the Constitution, except that such person is a woman, has the right to vote at an election regularly held for the election of a school-district treasurer. It is pointed out in the opinion that the constitution of Kansas did not anywhere mention the election of any school-district officer and specifically provided that all officers whose election or appointment is not provided for in the constitution should be elected or appointed as may be prescribed by law, and the court remarked: “Now, if section 1 of article V of the constitution does not apply to school-district elections, then what is there to prevent the legislature from conferring the right of suffrage in school-district elections upon women ?”
Section 27, Article II of the Ohio Constitution, *178 contains a like provision, viz.: “The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution, or the constitution of the United States, shall be made in such manner as may be directed by law.”
In The State, ex rel., v. Cincinnati et al., 19 Ohio, 178, supra, the court say, at page 197: “Now a school director, although in some respects a public officer, is not even a township officer. He is merely the officer of a school district—a political organization unknown to the constitution—the mere creature of legislative enactment. And it seems to the court that the power creating the political organization might well define the qualification of its officers, if in so doing they do not violate any express provision of the charter under which they themselves act.”
The case of The State, ex rel., v. Constantine, 42 Ohio St., 437, is referred to by counsel for defendants. It was there held that “A statute authorizing the election of four members of the police board at the same election, but which denies to an elector the right to vote for more than two members is in conflict with article 5 of the constitution.”
The case was cited and considered by the court in the Mills case, supra. Judge Shauck said concerning it: “That act did not attempt to extend the right to vote to any who had not the constitutional qualifications of electors. The vice of the act, in the opinion of the court, was that in the election of municipal officers it denied the right of constitutionally qualified electors to vote for the *179 whole number of officers to be chosen. It is clear that the act now under consideration is not within the terms of that decision, whether within its principles or not.”
The court in the Constantine case point out that the qualifications of electors are not defined by the statute there involved.
This court did not regard that case as controlling the Mills case, supra. Acts of a similar character have, upon like reasoning, been sustained in State, ex rel., v. Cones, 15 Neb., 444; Opinion of Judges, 115 Mass., 602, and Huff v. Cook, 44 Ia., 639.
Counsel for the relatrix cite authorities in support of the proposition that as to offices not contemplated or provided for in the constitution the legislature in creating such offices may prescribe the qualifications of the voters who are to participate in filling them, viz.: Hanna v. Young, 84 Md., 179; State, ex rel., v. Hanson, 80 Neb., 724; State, ex rel., v. Dillon et al., 32 Fla., 545; Scown v. Czarnecki, 264 Ill., 305, and Spitzer v. Village of Fulton, 172 N. Y., 285. So far as the present case is concerned, in the view we take, it is not necessary for us to approve the proposition stated nor to hold that-Section 1, Article'V of the Constitution of Ohio, is limited in its application to elections of officers enumerated in the constitution.
We think it may be safely stated that the weight of the adjudications since the decision of the Mills case, supra, has tended to support the propositions there laid down. There has been full acquiescence in that decision for a long period of time, and the statute -there involved has been in operation *180 throughout the state. It is generally agreed that when a decision of a court of last resort determining the constitutionality of a statute has been acquiesced in by the legislature and the people for a considerable period of time, the courts incline to a steadfast adherence to that decision. 6 Ruling Case Law, 66.
Defendants call attention to Section 4 of Article XV of the Constitution as amended in 1913. After the language of the original section, “No person shall be elected or appointed to any office in this state, unless he possess the qualifications of an elector;” the amendment adds a proviso “that women who are citizens may be appointed as members of boards of, or to positions in, those departments and institutions established by the state or any political subdivision thereof involving the interests or care of women or children or both.” The proviso expressly concerns the appointment of women to the places named, and authorizes. the appointment of women who are not electors. It does not concern the qualification of electors or the method of determining it. For example, it would not be contended that it was intended to deprive women of the right to vote for or be elected as school directors in accordance with the statute then and now in force.
But it is insisted by the defendants that the Mills case should not be extended beyond its own limits; that the statute involved in that case was held valid as being within the power to provide for the establishment and maintenance of common schools, which the constitution confers on the general as *181 sembly. To this it is replied that in this case it is not necessary to do so — that the provisions of Article XVIII of the Constitution, as amended in 1912, contain an equally comprehensive authority to municipalities to adopt charters for their government and to exercise all powers of local self-government.
In The State, ex rel. City of Toledo, v. Lynch, Auditor, 88 Ohio St., 71, which involved the interpretation of the home-rule amendment, Article XVIII of the Constitution, Shauck, J., points out the steps by which the terms of that amendment became effective in the different municipalities.
He says, at page 93: “This article provides two modes of securing the permitted immunity from the operation of the uniform laws which the legislature is required to pass.”
After reciting that one method is by the passage of laws by the legislature to be ratified by the municipality to be affected thereby, Judge Shauck continues: “The other mode is defined in the provisions of the later sections relating to the adoption of charters. From the terms and nature of these latter provisions they are self-executing in the sense that no legislative act is necessary to make them effective.”
In Billings et al. v. The Cleveland Ry. Co., 92 Ohio St., 478, it is said, at page 484: “It was contemplated by the .framers of the amendment to the constitution that the provisions in a charter, adopted by a city, would differ from the general laws of the state, within the limits defined by the constitution. The object of the amendment was to *182 permit such differences and to make them effective. * * * The state has given its sanction to a charter or plan of local self-government when thus adopted. There is no imperium in imperio, except in the sense that by the approval of the state the city exercises part of the sovereign power under the limitations imposed, and may thereby, subject to such limitations, exercise all powers of local self-government. This involves no lack of the harmony that is essential and no loss by the state of its proper authority over the city and its people. The charter becomes the organic law of the municipality so far as such local powers are concerned.”
The basis of the opinion and the judgment of the court in the Mills case, supra, was that the offices to be filled were not any of those created by the constitution, and that the constitution had conferred power upon the general assembly to provide for the establishment and maintenance of common schools.
As above stated, in this case it is not necessary, in the conclusion we have arrived at, to hold that Section 1, Article Y of the Constitution, is limited in its application to the election of officers enumerated in the constitution.
It is equally clear in the case we have here that the offices for which the relatrix seeks to vote were not created by the constitution, and it is also equally clear that the subject-matter, to-wit, municipal government, is one as to which the constitution confers power upon the municipality to adopt its own provisions. The charter , of a city, which has been adopted in conformity with the provisions of *183 Article XVIII, finds its validity in the constitution itself, and not in the enactments of the general assembly. The source of authority and the measure of its extent is the constitution. It would seem by analogy, therefore, that, if the legislature was vested with power to confer the right to vote upon women for school directors, because that is not an office created by the constitution, and because the general assembly had been given power to provide for the maintenance of common schools, a fortiori the charter of a city, by which a part of the sovereign governmental power may be exercised under the sanction of the constitution itself, which conferred upon women the right to vote for municipal elective officers and to be elected to and hold a municipal office, not created by the constitution but by the charter itself, is valid.
Counsel for defendants concede that “it may well be that the power to prescribe the qualifications of electors for the purpose of all local elections is accurately classified as one of the powers of local self-government,” but contend that Article V, Section 1, is controlling. But we are here confronted with the Schedule to the Constitution, as adopted in 1912, viz.: “Any provision of the amendments passed and submitted by this convention and adopted by the electors, inconsistent with, or in conflict with, any provision of the present constitution, shall be held to prevail.”
Any provision in a charter which purports to confer powers upon a municipal government in excess of those permitted to be granted by the constitution, or which disregards in any way the *184 limitations imposed by that instrument, would of course be void. Therefore, the provisions of Section 36-A, conferring upon women the right to vote for all municipal elective officers, and the right to hold any municipal office, could not be extended beyond the proper scope of local self-government.
The authority given by Article XVIII of the Constitution to adopt a charter, and exercise thereunder all powers of local self-government, is manifestly limited to matters of purely local and municipal concern. No power is thereby granted to legislate upon or interfere in any way with the affairs of the state government. The municipality, as well after as before the adoption of a charter, is an arm—a part—of the state. It could not confer upon women the right to vote for, or exercise any of the functions of, an office created by the constitution or by the general assembly. For example, Section 1, Article IV of the Constitution, makes provisions for courts to exercise the judicial power of the state. That is a matter wholly within the state governmental authority, to be provided for and regulated by the state. And to hold that a municipality could establish a court with jurisdiction in state cases, or make any other provision relating to governmental matters of the state or any of its subdivisions except the municipality itself, would be to confer on it powers not at all contemplated by the home-rule amendment.
It was held in Steamboat Northern Indiana v. Milliken, 7 Ohio St., 384, that an act to confer on a mayor jurisdiction of a justice of the peace in all matters, civil and criminal, arising under the laws *185 of the state, required the votes of two-thirds of all the members elected to each house of the general assembly, under the provisions of Section 15, Article IV of the Constitution. This was on the ground that jurisdiction to try such cases was lodged by the constitution in state courts estab- ■ lished according to its provisions.
Section 10, Article IV of the Constitution, provides that “All judges, other than those provided for in this constitution, shall be elected by the electors of the judicial district for which they may be created, but not for a longer term of office than five years.”
Therefore, if a woman should be- elected mayor, pursuant to the terms of a charter adopted by a municipality, she would be incapable of exercising any of the jurisdiction of a magistrate in civil or criminal matters which the legislature might confer by general provisions upon the mayors of cities and villages.
For the reasons hereinbefore given, the writ will be allowed.

Writ allowed.

Nichols, C. J., Wanamaker, Newman, Matthias and Donahue, JJ., concur.