PHILETUS BEVERLY *et al.*, Plaintiffs in Error, *v.* HOLLIS SABIN *et al.*, Defendants in Error.

### ERROR TO COOK.

Under the school law of 1857, a tax for the erection of school-houses must be voted by the people. If a debt has been incurred for this purpose, and a judgment is outstanding, it would seem that a mandamus, commanding the assessment and levy of the tax, would be the proper proceeding.

SABIN, Clawson, and Stott, of Barrington, Cook county, and Goss and Stephens, of Cuba, Lake county, on the 2nd February, 1858, filed their bill in chancery, in the Cook Circuit Court, setting forth that for two years last past and upwards, they had been "residents and tax-payers" in the school district known as "part school district No. one, in township 42, and part school district No. one, in township 43 N., R. 9 E., in Cook and Lake counties; said district being composed of lands lying in two townships, viz.: in Barrington, Cook county, and Cuba, Lake county.

"And that the two townships aforesaid are, and for more than four years last past have been, laid off into districts, and that said district now is, and for more than four years last past has been, laid off a school district, and has been during all the period aforesaid, *a legally formed and organized* school district."

That the house called the school-house of the district is situated in Barrington, and that part of the district lying in Cook county was the quarter of the two parts.

That in the spring of 1856, a number of persons, but a small number of the voters, and much less than a majority of the said voters and tax payers therein, met, and pretended to hold a school meeting; that at the meeting no record was kept, and from that time no record has been kept.

That there was no legal notice given of the said meeting; that it was informally and illegally held. Some kind of a vote was taken, and that three persons, viz.: Beverly, Squires, and Ralph, had since that time claimed to act as directors of said school district.

" And that said meeting was unauthorized by and could not be held legally at that time in the year, under and by the statutes and laws of this State. And that previous to and before said meeting, said defendants, Nathan Squires and John Ralph, never held or pretended to hold, any office of any kind in said district."

That, soon afterwards, the said persons, claiming to act as directors, gave up the land on which the school-house of the district then stood, to a pretended owner of the land, which site the complainants believed had been either bought by the district, or donated to the district.

That, during the year 1856, the said directors erected on that site " a school-house for school purposes for said district."

That the complainants, as inhabitants and tax payers, had been unable to find out from said pretended directors how the business of the district had been transacted and then stood. That during two years last past no records had been kept; that the directors refuse to inform them relative to the business, and how the accounts of the district stood. That during two years last past, no regular meeting had been called in said district at which any business of any kind had been done. That Squires, before the last regular annual meeting should have been held, had caused notices to be put up, calling such meeting one week too late. And when the meeting convened, at the suggestion of Squires or his friends, they did not do any business for that reason.

That the house built by said pretended directors will cost from $1,500 to $2,500; and that a suitable house might have been built for $700 to $900; and if they had not intended it for a church, it would have been built so as not to cost over $900.

That since the house has been completed, it has been used on the Sabbath days for religious services, and Beverly has preached a part of the time therein.

That the upper room had been used for some months past by a society called the Good Templars, under the direction of said pretended directors, and had not, during that time, been used for school purposes at all.

" That said district is, and has been for some time, largely in debt on account of the aforesaid improvement made as aforesaid;" and that on 20th June last, 1857, said directors made two directors' certificates, and served the same, one of which was sent by them to the county clerk of Cook county, and the other to the clerk of Lake county. A copy of which sent to Cook county is attached to the bill, and is as follows:

We, the undersigned, directors of part district No. 1, township No. 42 and 43, range No. 9, in the counties of Cook and Lake, and State of Illinois, do hereby certify that said board have estimated and required to be levied, for the year 1857, two (2) dollars, for paying the indebtedness of said *dis.*, and the rate of ten (10) cents for dis. library, on each one hundred (100) dollars valuation of taxable property in said district.

Given under our hands this twentieth day of June, 1857.

PHILETUS BEVERLY,
NATHAN SQUIRES,
*Directors.*

That the clerks respectively have issued, to the collectors of the said townships, collectors' books in accordance with said certificates. That George T. Waterman is collector of Barrington, and John Jackson of Cuba, and that the collectors are now urging the payment of said tax, and threatening to sell complainants' property to pay the same, which they will do if not restrained by this court.

That said indebtedness is larger than it should be, because the house has been built larger than necessary for school purposes, and more with reference to church purposes; and the manner of paying for the same in goods, and buying wood at $3.50, and charging $5, has increased indebtedness. That directors claim a great portion of the indebtedness is going to them. That the expending of $1,000 more than was necessary on said building, and making profit thereon as charged, is a great fraud on the district.

"And your orators further show that the certificate made out by said pretended directors as aforesaid is illegal, and not authorized by law. That no vote of the tax payers, (*legal voters by fifth amendment,*) of said district, or any of them, had been taken, authorizing said directors to levy a tax for the payment of any indebtedness on said district, and that without such vote said pretended directors had no right to levy any such tax to be levied, and that the said county clerks of the respective counties aforesaid, had no right under such certificate to issue tax books to the aforesaid collectors; and that therefore said assessment and tax which said collectors are now attempting to collect of your orators, and out of the property of said district, is void, and that your orators and said district should not be compelled to pay the same."

That the bill was filed on behalf of the complainants and a majority of the tax payers of the district, to obviate the necessity of having more than one suit.

That the directors of schools had no right to run any district in debt for any purpose, for more than three per cent. on the assessors' valuation of the property in such district, and not

run a district in debt at all for any purpose without the sanction of a vote of said district, both of which the aforesaid directors had done, and were then seeking to collect a part of said indebtedness, made as aforesaid, by the enforcement of said tax.

That the defendants might be restrained from proceeding in the collection of the tax, assessed and levied as aforesaid.

That the directors might render an account of moneys received and paid out by them as such, and also their claims against the district, and of the debts and liabilities of the district.

And that injunction and summons might issue.

Bill sworn to, and injunction allowed by master.

February 12, 1858. Defendants, Beverly, Squires and Ralph, file their answer under oath.

That they had been duly elected school directors of the district, and were then acting, and for some time past had acted as such. That during all the time they had acted as such, records of their proceedings had been kept, though not very formal, yet sufficient to advise all persons of their acts as such. That such records had always been open to public inspection; and they deny that they ever refused to allow the complainants to inspect them, and to inform them what they, as directors, had done.

" That the defendants, as they are advised and believe, had by law, at that time, the discretion exclusively vested in them, of causing suitable lots of ground to be procured, and suitable buildings to be erected thereon for school-houses; and that being so vested with that authority, they did, in good faith, proceed to buy said lot of ground for said district, and to erect thereon said building; and they say, and insist, that the complainants have no right in this form of proceeding to inquire into their acts touching the purchase of said lot, and the erection of said house, and they pray the same benefit herefrom, as though they had answered to said bill specially; for that reason, upon this point, they pray the judgment of the court."

The defendant, Squires, gives a statement of his account against the district, in an exhibit, C, which, he says, is fair, just and reasonable.

The defendant, Beverly, gives a statement of his account against the district, in an exhibit, D, which, he says, is fair, just and reasonable.

They also give an account of J. S. Davis for lumber furnished.

That the certificates made and delivered by them to the clerks of Cook and Lake are legal, and in due form of law. And that no vote of " tax payers" is by law required. That on the 1st Monday of July, 1857, the district was justly indebted to

various persons, including the amounts of said accounts herein above alluded to, in the sum of $1,300, or thereabouts ; the greater portion of which was for purchasing materials for and erecting said district school-house. That to pay off said indebtedness, and for no other purpose, did they cause said certificates to be issued and delivered.

That the total cost of the house is from $1,300 to $1,400.

General demurrer to the bill and denial of fraud, etc.

The cause was brought on by the complainants for final hearing upon the bill taken as confessed against said defendants. It was ordered by the court, that the injunction granted and allowed in this cause be made perpetual, so far as to restrain the defendants, Jackson and Waterman, from further proceedings to enforce the collection of, the school tax levied and assessed upon said complainants, and mentioned in the bill of complaint in this cause as amended. And that the defendants pay the costs of this suit, to be taxed.

The decree was pronounced by MANIERRE, Judge.

W. T. BURGESS, for Plaintiffs in Error.

NICHOLS & McKINDLEY, for Defendants in Error.

CATON, C. J. We cannot hold ourselves responsible for the consistency of all the laws which we are called upon to construe. Nor can we undertake that they shall accomplish their ends in the most direct, economical or convenient mode which could be devised. We must take them as we find them, and interpret them by the long established and well known rules of construction, although we may suppose that the legislature did not precisely appreciate the result to which their language irresistibly leads.

Previous to the revision of the school law of the last session, no material difficulty in a case like the one which gave rise to this suit, would occur. It may be admitted that the school directors were authorized to incur the debt to pay which this tax was assessed, and under the law of 1855 they also had authority to assess the tax. This authority was conferred by the 59th section of that law, from which the 44th section of the law of 1857 is substantially copied, into which, however, these words are inserted : " *Provided,* that the people vote the same as hereinafter expressed." And yet, in no subsequent part of that law is any provision made for taking a vote of the people upon the tax to be assessed. In this respect the law is no doubt incomplete. When this proviso was inserted, it must have been the intention to make a further provision, more in detail, for

24

such a vote ; but for some reason or other, this was omitted to be done ; and the question is, whether we may disregard the provision because no subsequent one was made. Upon this subject we cannot hesitate. By every known rule for construing statutes, we are bound to obey the legislative will, when we find it clearly expressed in a statute which they have a right to pass. Here every circumstance shows that this proviso was deliberately inserted. It is a new provision incorporated into the body of an old law, and clearly expresses that a vote of the people shall be taken upon the tax to be assessed. This intention is as clearly manifested as if the words " as hereinafter expressed," had not been inserted. Some criticism has been made because the word *people* instead of the word *voters* is used. We cannot doubt that this word, as here used, means voters, or the people who are entitled to vote in the district. We feel bound to observe and enforce the provision of this law.

The question then arises, what is to be done if the people refuse to vote the necessary taxes to pay the debts against the district which have been legally contracted. Such a contingency seems to be abundantly provided for by the 49th section of the school law of 1857. That section provides that when a judgment shall be obtained against a school district, it shall be ordered to be paid out of any money belonging to the district not otherwise appropriated ; and if there be no such funds, then the court shall order and compel the board, by *mandamus*, to levy a tax for the payment of such judgment. This order of the court is made irrespective of any vote of the people on the subject of the tax, and it may be presumed was designed to supersede any such vote. The law, when taken together, clearly indicates the legislative intention that no tax should be levied, except in obedience to a vote of the people or an order of the court to satisfy a judgment which had been rendered against the school district. It has been said, and perhaps with truth, that it seems like a useless ceremony, and an unprofitable expense, when an acknowledged legal obligation exists against the district, that the directors cannot provide for its payment till the expense of a judgment has been incurred, the costs of which shall be added to the original debt. The wisdom of this it is not for us to vindicate. It is enough to know that such seem to be the provisions of the law which the legislature, in the exercise of a legitimate power, have passed.

The decree of the Circuit Court must be affirmed.

*Decree affirmed.*