SCOTT v. TWOMBLEY et al.

(Supreme Court, Appellate Division, Second Department. August 2, 1897.)

1. VILLAGES—ELECTORS—CONSTRUCTION OF STATUTES.
   Under Laws 1888, c. 525, providing for the acquisition of parks by villages on a majority vote of the "electors of the village," a nontaxpayer may vote, notwithstanding Laws 1870, c. 291 (General Village Act) tit. 2, § 13, provides that only taxpayers should vote to purchase property.

2. MUNICIPAL BONDS—PAYMENT—INJUNCTION.
   Taxpayers cannot enjoin the payment of negotiable bonds unlawfully issued as representing a debt that should have been acknowledged in some other form.

Appeal from special term.

Suit by William M. Scott against Charles E. Twombley and others, trustees of the village of Jamaica, and another. From an order granting an injunction pendente lite, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William S. Cogswell, for appellants.

F. H. Van Vechten, for respondent.

PER CURIAM. This action is brought by the plaintiff, as a taxpayer of the village of Jamaica, to restrain the defendants, who are the trustees and treasurer of that village, from paying any money on account of the principal or interest of certain bonds issued for the acquisition of a public park, and from incurring or paying any money for the care and improvement of such park. At a special election held on the 29th day of June, 1897, a majority of the electors of said village voted in favor of the adoption of a resolution authorizing the trustees to acquire for a park a certain plot of real estate in the village, and for the purpose of such acquisition to raise the sum of $50,-000 in 10 annual installments of $5,000 each, and, in addition thereto, interest at the rate of 4 per cent. per annum upon certificates of indebtedness or bonds. The trustees, in pursuance of this authority, acquired the specified real estate for the purpose of a park, and executed and delivered to the vendors the $50,000 in bonds or certificates of indebtedness which are the subject of this controversy. The validity of the bonds is assailed because electors of the town, not owners either in their own right or that of their wives of property assessed upon the assessment roll of the village, were allowed to participate in the election. For this reason the special term held the election void. We think the election was properly held. The statute of 1888 (Laws 1888, c. 525) provided a complete scheme for the acquisition of a park by any incorporated village within the state. The first requisite for obtaining a park was that the board of trustees of the village shall be "authorized so to do by a vote of a majority of the electors of the village voting thereon at any annual or special meeting duly called of such electors." There can be no reasonable question as to who are the electors of a village, or of any political division of the state. The term is of frequent use in the constitution and statutes. They are the citizens of the state who, under the constitution and statutes, are entitled to vote at elections for public offi-

ces. By section 13 of title 2 of the general act for the incorporation of villages (chapter 291, Laws 1870) it was provided that no person should vote at a village election upon a proposition to raise or appropriate a tax or purchase property unless at the time he or his wife was the owner of property assessed on the last preceding assessment roll. This provision substantially enacted that no one but a taxpayer should vote on a proposition to levy a tax or purchase property; but it did not assume to, nor did it in fact, vary or affect the definition of the term "electors." It merely prescribed that certain electors only should vote on certain questions. Under the general village act, a village had no power to acquire a park, so no such question could be submitted to the taxpayers. The statute of 1888 is an original enactment, and there is not incorporated in it the provisions of the general village act. We are therefore not justified in giving any other meaning to the term "electors of the village" than the natural and accurate one.

It is urged that the act of 1888 does not authorize the village to issue its bonds for the payment of a park. This may be conceded, but the trustees are authorized, on a vote of a majority of the electors, to acquire the land, and contract therefor, and to cause the sum necessary to procure the title thereto to be raised by taxation, either in a single sum or by installments. This plainly authorized the purchase, either in whole or in part, on credit. Ketcham v. City of Buffalo, 14 N. Y. 356. It may well be that, though the village was authorized to purchase on credit, it was not authorized to issue negotiable bonds, either directly in payment of land or for the purpose of borrowing money thereon from other persons, to be applied to the same purpose. The issue of such bonds might, on account of their negotiability, impose greater liabilities on the village than a simple nonnegotiable debt to the vendors of the park lands. Had the plaintiff intervened promptly to prevent the defendants from giving an acknowledgment of the debt in the form of negotiable bonds, it may well be that their issue should have been restrained. But the bonds have been issued. Conceding, for the argument, that the bonds as such are without authority of law, and void, that does not relieve the village from the obligation to pay the principal and interest of the debt it owes for the land. The bonds, though considered void as negotiable instruments, may very well be treated as representing specific parts of the village obligation, and the purchaser of the bonds as the equitable assignee of so much of the village debt. If the trustees or electors assumed to go beyond the terms of the statute, and to issue without authority negotiable instruments for the purchase of the lands, it is simply the excess of power that is void; but the obligation of the village to pay for the land acquired still remains, and the title to the land is vested in the village, and the trustees are authorized to maintain the park. Both the statute of 1888 and that of 1870 are now repealed, but the repeal took effect subsequent to the transactions recited, and hence does not affect the questions before us.

The order should be reversed, with $10 costs and disbursements, and the injunction dissolved, with $10 costs to abide the event.