# Cases

---

WILLIAM M. SCOTT, Respondent, *v.* CHARLES E. TWOMBLEY and
Others, Each Individually and as a Member of the Board of
Trustees of the Village of Jamaica, and Collectively as the Board
of Trustees of the Village of Jamaica, Queens County, and
ALFRED H. BEERS, as Treasurer of said Village of Jamaica,
Appellants.*

*Municipal corporation — " electors," as used in chapter 525 of 1888, authorizing the·
acquisition of lands for village park purposes — power of the village to issue nego-
tiable bonds to pay for such lands — a holder of a bond is an equitable assignee of
the debt.*

Chapter 525 of the Laws of 1888, permitting the trustees of an incorporated village
to acquire land for a park, and to cause the sum necessary to procure the title
thereto to be raised by taxation, either in a single sum or by installments, when
" authorized so to do by a vote of the majority of the electors of the village,"
is not affected by the provisions of section 13 of title 2 of the General Village
Act (Chap. 291 of the Laws of 1870), providing that no person shall vote at a
village election upon a proposition to raise or appropriate a tax or purchase
property unless, at the time, he or his wife be the owner of property assessed
on the last preceding assessment roll.

The statute of 1888 is an original enactment, and the word " electors," as used
therein, embraces all those citizens of the State who, under the Constitution
and statutes, are entitled to vote at elections for public officers.

*Semble*, that although a village has power, under the act of 1888, to purchase
land for park purposes on credit, it has not power to issue negotiable bonds to
pay therefor, as the issue of such bonds may, on account of their negotiability,
impose greater liabilities upon the village than a simple non-negotiable debt to

---

* The decision in this case was handed down August 2, 1897.

the vendors of the park lands; but although bonds thus issued may be void, they still represent specific parts of the village debt, and a purchaser thereof is the equitable assignee of such part of that debt.

APPEAL by the defendants, Charles E. Twombley and others, each individually and as a member of the board of trustees of the village of Jamaica, and collectively as the board of trustees of the village of Jamaica, Queens county, and Alfred H. Beers, as treasurer of said village of Jamaica, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 24th day of July, 1897, granting the plaintiff's motion for an injunction *pendente lite.*

*William S. Cogswell,* for the appellants.

*F. H. Van Vechten,* for the respondent.

PER CURIAM:

This action is brought by the plaintiff, as a taxpayer of the village of Jamaica, to restrain the defendants, who are the trustees and treasurer of that village, from paying any money on account of the principal or interest of certain bonds issued for the acquisition of a public park, and from incurring or paying any money for the care and improvement of such park.

At a special election, held on the 29th of June, 1897, a majority of the electors of said village voted in favor of the adoption of a resolution authorizing the trustees to acquire for a park a certain plot of real estate in the village, and for the purpose of such acquisition to raise the sum of $50,000, in ten annual installments of $5,000 each; and, in addition thereto, interest at the rate of four per cent per annum upon certificates of indebtedness or bonds. The trustees, in pursuance of this authority, acquired the specified real estate for the purpose of a park, and executed and delivered to the vendors the $50,000 in bonds or certificates of indebtedness, which are the subject of this controversy. The validity of the bonds is assailed because electors of the town, not owners, either in their own right, or in that of their wives, of property assessed upon the assessment roll of the village, were allowed to participate in the election. For this reason the Special Term held the election void.

We think the election was properly held. The statute of 1888

(Chap. 525) provided a complete scheme for the acquisition of a park by any incorporated village within the State. The first requisite for obtaining a park was that the board of trustees of the village shall be " authorized so to do by a vote of the majority of the electors of the village voting thereon at any annual or special meeting duly called of such electors." There can be no reasonable question as to who are the electors of a village, or of any political division of the State. The term is of frequent use in the Constitution and statutes. They are the citizens of the State who, under the Constitution and statutes, are entitled to vote at elections for public offices. By section 13 of title 2 of the general act for the incorporation of villages (Chap. 291, Laws of 1870), it was provided that no person should vote at a village election upon a proposition to raise or appropriate a tax or purchase property, unless at the time he or his wife was the owner of property assessed on the last preceding assessment roll. This provision substantially enacted that no one but a taxpayer should vote on a proposition to levy a tax or purchase property ; but it did not assume to, nor did it in fact, vary or affect the definition of the term " electors." It merely prescribed that certain electors only should vote on certain questions. Under the General Village Act a village had no power to acquire a park, so no such question could be submitted to the taxpayers. The statute of 1888 is an original enactment, and there is not incorporated in it the provisions of the General Village Act. We are, therefore, not justified in giving any other meaning to the term " electors of the village " than the natural and accurate one.

It is urged that the act of 1888 does not authorize the village to issue its bonds for the payment of a park. This may be conceded, but the trustees are authorized on a vote of a majority of the electors to acquire the land and contract therefor, and to cause the sum necessary to procure the title thereto to be raised by taxation, either in a single sum or by installments. This plainly authorized the purchase, either in whole or in part on credit. (*Ketchum* v. *City of Buffalo*, 14 N. Y. 356.) It may well be that, though the village was authorized to purchase on credit, it was not authorized to issue negotiable bonds, either directly in payment of land or for the purpose of borrowing money thereon from other persons, to be applied

to the same purpose. The issue of such bonds might, on account of their negotiability, impose greater liabilities on the village than a simple non-negotiable debt to the vendors of the park lands. Had the plaintiff intervened promptly to prevent the defendants from giving an acknowledgment of the debt in the form of negotiable bonds, it may well be that their issue should have been restrained. But the bonds have been issued. Conceding for the argument only that the bonds as such are without authority of law and void, that does not relieve the village from the obligation to pay the principal and interest of the debt it owes for the land. The bonds, though considered void as negotiable instruments, may very well be treated as representing specific parts of the village obligation, and the purchaser of the bonds as the equitable assignee of so much of the village debt. If the trustees or electors assumed to go beyond the terms of the statute, and to issue without authority negotiable instruments for the purchase of the lands, it is simply the excess of power that is void; but the obligation of the village to pay for the land acquired still remains, and the title to the land is vested in the village and the trustees are authorized to maintain the park. Both the statute of 1888 and that of 1870 are now repealed, but the repeal took effect subsequent to the transactions recited, and hence does not affect the questions before us.

The order should be reversed, with ten dollars costs and disbursements, and the injunction dissolved, with ten dollars costs to abide the event.

All concurred, except GOODRICH, P. J., not sitting.

Order reversed, with ten dollars costs and disbursements, and injunction dissolved, with ten dollars costs to abide the event of the action.